Case number 15-5163, Florida Health Sciences Center, Inc., doing business as Tampa General Hospital Appellant v. Secretary of Health and Human Services. Ms. Webster for the Appellant, Ms. Wright for the Appellee. Ms. Webster. My name is Stephanie Webster. I represent Florida Health Sciences Center, Inc., which does business as Tampa General Hospital, a safety net hospital in Tampa, Florida. As part of health care reform, Congress adopted a new Medicare payment methodology to reimburse hospitals for the costs of uncompensated care for the uninsured. And included in that new methodology was a provision precluding administrative and judicial review of a couple specific facets of that new methodology. Under the statute, there are several distinct payment components. The statutory text provides that the final payment amount is the product of three factors, which themselves are the function of several distinct elements, estimates, calculations, data, and periods. Most of the payment methodology is not addressed by this review preclusion provision. What is? Two things are the estimates by the Secretary for purposes of calculating the factors and periods selected by the Secretary for the same purposes. The question before the court is whether the preclusion of review provision unambiguously precludes review of the hospital's claims that the agency's determination to use known inaccurate data for one of those factors, factor three, is invalid and claim that the hospital's payment amount is incorrect. And our position is that because we're not challenging an estimate or a period, that... Aren't you challenging the estimate? We are not challenging the estimate, Your Honor. Are you saying it's correct? Are you conceding it's correct? Excuse me? Are you conceding that it is correct? We do not concede that the estimate is correct, however... Therefore, you are challenging it, are you not? We are not challenging the estimate. The statute uses the language based on appropriate data, which confirms that the data and the estimate should be distinct. In the situation at hand, what the Secretary did is determine that there was a one-to-one correlation between the actual amount of compensated care for low-income Medicare and Medicaid patients... But wouldn't that destroy the purpose of this provision if you could always challenge the data? Because you would always say, well, the data's wrong, so we can get in through that loophole to get judicial review of the ultimate estimate. Because you don't agree with the estimate, as you correctly acknowledged. I mean, our reading of the provision leaves a lot subject to challenge. For example, the estimate isn't just the actual value of the estimate. It's the methodology used to arrive at that estimate. But that's how you always challenge, well, not always, but often challenge some bottom lines by saying the reasoning, the methodology, the data was incorrect. When there's a broad preclusion of review of the decision, it seems like you're necessarily, to me, common sense, barring review of all the inputs into that conclusion. Well, our position is actually that it's not a broad preclusion. The final payment amount itself is not precluded. Nor is the entire methodology, which makes this preclusion provision, which is adopted as part of the Affordable Care Act, different from other... Was there any, by the way, any discussion of this provision that you're aware of? There is no legislative history on this. I mean, this wasn't even supposed to be the final act, as we know. Right, right. So if you compare this preclusion provision to other preclusion provisions in payment reforms affecting hospitals, you see that this is different. It doesn't preclude the final payment amount or the entire methodology. It precludes two very specific aspects of that methodology. It also doesn't, the statute also doesn't say that anything affecting the estimate is precluded. And, in fact, the period itself affects the estimate. And if Congress intended to preclude anything affecting the estimate, then it wouldn't have separately precluded a review of the period. But if you can review anything affecting the estimate, you're really allowing review of the estimate. What is the estimate other than it's based on all the... Well, the estimate has several different components. One is the period, which is precluded, and another is the data. And the data forms the foundation of the ultimate payment amount. And so it makes sense that Congress would have been concerned about that foundation. But it precludes review. I'm sorry to interrupt. It precludes review of both the estimate and the data. I mean, the estimate and the period, sorry. The estimate and the period, but not the data, right. Yeah. The estimate must mean something more than simply the period, the preclusion of the estimate. Yes. And that would seem to be the foundation of it. You seem to be writing the preclusion of the estimate out of the preclusion statute. Well, actually, the data, our position is that the data is not precluded, but the extrapolation is precluded. So there is daylight between the data. Why would we look at the statute and know that? The statute precludes review of this. You're saying, well, it just means review on the basis of the computation or the methodology. It doesn't mean review on the basis of the data. Well, I think two things in the statute. One is that the preclusion provision itself speaks of an estimate needing to be based on appropriate data, and that reflects a textual distinction between the two. And, again, if you look at the other preclusion provisions that were adopted at the same time, you can very well conclude that this preclusion provision is more narrow. But in any event, in light of the presumption in favor of reviewability, any ambiguity. Yeah, that's got to be your hook here, right, that there's such a strong presumption of reviewability that we narrowly, narrowly, narrowly, narrowly interpret any preclusion provision to the point where we're not even reading it to say what it says. Well, I don't know that you would. Which is fine because courts have done that, so that's not, you know. You don't want to acknowledge that, but that's been done. I don't know that you need to go. I'm sure you don't need to go that far here. To the extent that the statute governing Factor 3 addresses period and estimate and data separately, but the preclusion provision only talks about period and estimate, I think it's fairly easy to find that there's some ambiguity that must be read in favor of review. What exactly is the ambiguity? Well, the ambiguity is that the preclusion provision mentions only two of the three and the statute mentions three. And, of course, in construing the statute, you can look at the context as well, including those other provisions adopted by the ACA that I mentioned. Which is your best example of another provision, or best couple of examples that are? Well, two of them, and those provisions are found in the addendum to the appellant's opening brief. At beginning at 4A, there's one on hospital value-based purchasing that's 1495, excuse me, according to U.S.C. 1395, W.W.O., another one at P, another one at Q. And not surprisingly, our provision is at R, so they all come in a row. Under hospital value-based purchasing, you see that under, let's see, like two-thirds of the way down the page on page 4A, there's B, Romanet 1. The methodology used to determine the amount of the value-based incentive payment under Paragraph 6 and the determination of such amount. That is very different from the preclusion provision at issue in our case. Do you have the one in this case in front of you right now? Would you read what it says it precludes? The statute? The statute at issue here? The preclusion at issue here? Yes. Happy to do that, Your Honor. Okay. It's titled Limitations on Review. There shall be no administrative or judicial review under Section 1395F of this title, Section 139500 of this title, or otherwise of the following. A, any estimate of the Secretary for purposes of determining the factors described in Paragraph 2. B, any period selected by the Secretary for such purposes. And that language is found on page 8A of the same addendum. Yes. And I'm not sure how you get around the language of that subcap A. The no review of any estimate of the Secretary for purposes of determining the factors. Isn't this an estimate for purposes of determining those factors? Well, our position is that it's not an estimate. It's not an estimate? We're challenging the data and not the estimate. And the estimate, for example. But the estimate is always going to be based on data. So what is precluded by that language if this isn't precluded? Well, Your Honor, you said it yourself. The estimate is always going to be based on data. So there is a difference between the two. What is precluded if this isn't precluded? What's precluded is the actual extrapolation methodology. It's the actual estimating. Isn't it always going to be based on extrapolation methodology too? I'm sorry, Your Honor. Isn't it always going to be based on extrapolation methodology also? Sure. Why is the one any more precluded in the preclusion than the other is included in the preclusion? Well, I think the ‑‑ assuming that the estimate does not represent just the actual value, I think it would more fairly be included in estimate and data is separately described in the statute. Where is it separately described in the preclusion statute? It's separately described in the substantive statute governing the calculations. But this preclusion does not separate that at all. It simply says there should be no review of any estimate of the secretary for purposes of determining the facts. It does not make the distinction that you're making between data and extrapolation. Right. And that is true. The government's reading, though, would also render the preclusion of the period surplusage. So we believe that as well. What's the surplusage? Well, the preclusion provision references estimates and periods. And, again, if Congress intended for estimate to include anything leading up, anything affecting the estimate, then Congress would not have separately precluded the period. It's often redundant. Sure. But you're right to cite the canon. Well, again, the canon, to the extent that there's ambiguity, then the court must find that there is review and there is at least, in our view, jurisdiction over whether the secretary's estimate is a statutorily authorized one following Amgen. There the court found jurisdiction to review whether a determination by the secretary was authorized. In that case, that case involved an adjustment made by the secretary where the secretary determined an adjustment to be necessary to ensure equitable payments. There was a preclusion provision there, but the court in Amgen found that there was at least jurisdiction to determine whether the kind of adjustment made there, and here it would be the kind of estimate made here, is statutorily authorized. And because the secretary is only authorized to make estimates based on appropriate data, there would be jurisdiction to that degree. So under your theory, though, the data, we can review that to make sure they had the right data that they were looking at or at least appropriate data, but then they can make a completely screwball estimate. That's right. And we can't do anything about that. So we're going to really micromanage the data, and then they're just free to go with anything. There's a long line of Medicare cases that that approach would actually be consistent with. Yes, it sure is. In Cape Cod, for example, this court, in summarizing sort of the state of that case law, said that the agency is not permitted to continue using inaccurate data after the error in the data in which the agency has relied is brought to the agency's attention. And that's what we have here. We have data that was known to be inaccurate. The secretary doesn't even claim it was accurate, and yet the secretary continued to use it. So the concern with the data, the foundation of the payments, is reasonable given the state of the case law on Medicare payment errors. Do you think it's logical, though, to bar judicial review of the estimate if there is judicial review of the data? Is that logical? Well, I mean, would I think it better for none of it to be precluded? Yes. But I can see a distinction being made between the secretary's choice of data on actual care previously furnished and a secretarial projection. I think a projection or kind of an assessment of the connection between the data and the projection requires a bit more of expertise. So you can't use phony numbers. And this is a helpful question. You can't use phony numbers. But once you get the right numbers, you have a lot of discretion to make the final estimate. Right. And there's a lot in the number. I mean, the numbers can have a significant effect on the ultimate payment amount for sure. But I think that there is a reasonable distinction to be made between those two. Doesn't your reply brief admit that there is no extrapolation here? Well, that's a great question. In this situation, what the secretary did is decide that there was a one-to-one correlation between. I'll take that as a yes. Our view, though, is that the. . . You can keep going. The fact that the secretary found there to be a one-to-one correlation between different kinds of care should not preclude review. The fact that there wasn't any math done shouldn't make it easier for the secretary to avoid review. It would make it rather hard to say that we would have review of the extrapolation but not the data. I mean, the data but not the extrapolation. Well, and what the secretary could have done but did not do was, you know, what she could have done is decided, okay, we're going to use this data, but we're going to make some adjustments because we recognize that in states that have actually expanded Medicaid under health care reform, that there would be more Medicaid care and less uncompensated care and vice versa. That's the kind of adjustment or extrapolation that was contemplated, I would think, by the statute. But the secretary didn't choose to do that. Okay. Thank you. We'll give you time on rebuttal. Thank you. Good morning. Abby Wright on behalf of the secretary. I'd be happy to answer any questions your honors have, but I wanted to begin with the issue of whether the period is superfluous in the review, the bar on judicial review. So the bar on judicial review applies to all the factors in subsection R, and in Factor I and Factor II, there are also estimates and there are also periods. There are estimates that are not periods and periods that are not estimates. So there really is no period, particularly in review, for the period is not superfluous here. There's some overlap but not superfluous. There's some overlap in the Texas Alliance case. There was a great deal of overlap, too, between bidding structure and awarding of contracts. I think it's common for Congress to do that, and it really shows the breadth of preclusion here. At heart, what plaintiffs are challenging is the amount of uncompensated care. That's an estimate under the statute, and review of an estimate is precluded. So I think that their challenge here is precluded. Where did these limitations on review come from? Do we know anything about that? Do you all, from your excavation of this act, know where this is? I don't know, your honor. I think that's right there isn't legislative history here. I don't know why Congress chose to do so, but in some ways it's efficient because, as I said, there's estimates and periods in all three factors, and so in the provision of judicial review. Well, it's always efficient to have no judicial review. No, I mean the drafting of the statute was efficient in the sense that there's periods and there's estimates throughout, so Congress could easily capture all of those. And so just to, you know this question's coming, but you can use completely false data, make it up, and make up the estimate and really just do the worst of the worst scenario from the administrative side and there's no judicial review. I have a couple of responses. First, of course, is to look at the statute, which says the amount of uncompensated care as estimated by the secretary. So that amount of uncompensated care is the estimate and judicial review is precluded. So I think, you know, there would be preclusion. Now, if the secretary did something so extreme, the most extreme hypothetical you can imagine, you might have a question of whether it were even an estimate, if it was not trying to tie it to anything, if it was pulling lottery balls out of a spinning machine. And the courts have recognized that people might be able to state sort of, they wouldn't be successful to try to state a substantial due process type challenge if the secretary, in the most extreme hypothetical. Of course, that's not what's happening here. But what's happening here, just to take a step back, because I was surprised to hear that the secretary acknowledged that inaccurate data was used. There's a huge cost report database. All contractors across the United States put their cost report data in. Periodically, the secretary freezes that database and pulls all the data out. It takes a very long time even just to pull the data out of the database. It produces an approximately 10 million line spreadsheet when that's done. It takes months to process that data, do a quality check, run all of the prospective payment system calculations from that. The dish payment is just a small sliver of this huge prospective payment system. So the secretary explained in the final rule, she needed five months of time to get that data in shape to use. So it's not inaccurate data. It was the most recent data that could be used in time for the August deadline for rulemaking. Although that's not relevant to the judicial review argument, from our perspective, I just wanted to make sure your honors were aware of why that happened. Comfort us. Yes. What would happen if we allowed judicial review? Well, I think we would have a great deal of instability and uncertainty, and that's because the additional dish payment is calculated on the basis of a pro rata share of a pot of money. And so it's quite similar to the budget neutrality, which Congress has imposed in other contexts. So it would recalculate the denominator for everybody if judicial review were permitted and lots of hospitals came in. And, indeed, there's another suit pending in the DDC with 30 hospitals who have brought additional challenges and then similar challenges to this one. And so I think the secretary would see on a rolling basis hospitals constantly saying, you know, we put new data in, we put new data in, and that would cause a great deal of uncertainty in a prospective payment system. There are lots of cases from this court and others that have talked about the need to look forward and to make estimates and projections, and Congress precludes judicial review in those cases often to provide stability in this huge Medicare payment system. But I guess the flip side would be that the hospital, there's a huge amount of money involved here for the hospitals and the extent that the secretary's not doing the job in the way that would be appropriate, that there should be some check on that. There's certainly preclusion provisions that this court has found applicable that deal with a huge amount of money, too. I mean, the geographic reclassification can be an incredibly huge amount of money for a hospital, depending on which city they're grouped with. Yes. And this court has found that in Palisades, for example, there was no judicial review of that based on the express statutory provision in that case, precluding review. What about the heavy presumption where we, as you well know, and other courts, have strained mightily to avoid reading preclusion provisions as they're written? Well, I think it's a little bit different of a question when you've got an express statutory provision. So if you look at this court's decision in Texas Alliance, I think once you've rebutted the presumption, that is, Congress has said that there is preclusion of judicial review, the court's job is then to figure out what Congress meant by that, what the plain terms of the statute say. And so I don't think it's, you know, it's not akin to a clear statement rule that Congress has to go even further. Congress has said that estimates, that courts can't review estimates. So this court's job is to figure out whether what plaintiffs are challenging is an estimate. And as I've explained, it plainly is because they want to change the number of Medicaid and SSI days that they were given credit for for the uncompensated care amount. Why do you think they put the based on clause in as estimated by the secretary and then adds the based on appropriate data? You didn't really need that. Well, I mean, I think Congress can speak to the secretary without saying there's judicial review. And I think it also, if you look at that parenthetical inside the parenthetical, including alternative data. And so I think it's directing the secretary, as she did here, to look to other sources of data that might be useful for estimating and that might be easier to administer going forward. If there are no further questions, we would ask the district court be affirmed. Thank you. A couple minutes for rebuttal. Thank you. First, I would like to clear up a little bit of confusion. And I think there was also some confusion on the part of the district court about how the factors and the estimates and all work together. The preclusion of review provision does not preclude review of the factors, which are at a higher level than the estimates and the periods and the data, nor does it preclude review of the final payment amounts. And I thought I heard my opposing counsel say that an amount is an estimate. And clearly under the text of the statute, there is a distinction between the final payment amount and an estimate. And not all of the estimates, there are not estimates in all three of the factors, nor are there periods in all the factors. And one thing, one particular thing that the government has focused on is the language in factor two. Excuse me. In the statute governing factor two, there is a reference to a period, but that is not a period that's selected by the secretary. In fact, the secretary doesn't have any discretion over what period of data to use. She is required, and this is in the addendum to the hospital's brief at 7A, there is a period for which data is available that's referenced. And actually, the secretary is required to use data from the Congressional Budget Office. And the most recent data from the Congressional Budget Office. So there is no period selected by the secretary that is not precluded from review. My opposing counsel also spoke a lot about the impact that review could have, and in particular, how complicated and time-consuming the process of developing these payment amounts is. But in fact, shortly after the beginning of the federal fiscal year at issue, the agency actually issued two correction notices consecutively that redid all the payment amounts for all the hospitals in the country, which makes it somewhat difficult to believe the contention that it's very cumbersome to do that. And in addition, the secretary has herself taken the position that if changes need to be made in the aggregate amount of, excuse me, if changes need to be made with respect to payments for particular hospitals, later in the process, a cost report reconciliation, because the hospitals are determined ineligible for these payments, the secretary has said in her rule that she will not go back and recalculate all the payment amounts for all the different hospitals. And so some of the havoc that the secretary predicts is just not going to happen. Has there been any effort to amend these judicial review preclusion provisions that you're aware of? In Congress? In Congress, I am aware of some efforts to amend this provision, yes. And what's the status of those efforts? I understand there are bills pending. In both houses? In both houses, yes. And have they gotten out of committee yet? They are not out of committee, no. If there are no further questions. Okay, thank you very much. The case is submitted. Thank you.
judges: Griffith, Kavanaugh, Sentelle